**KA FUNG CHAN, Petitioner,**

v.

**IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

**No. 79–2016.**

United States Court of Appeals, Fifth Circuit.

Jan. 15, 1981.

Rehearing Denied Feb. 11, 1981.

John William Brent, Myron N. Kramer, Atlanta, Ga., for petitioner.

Margaret J. Perry, James P. Morris, John J. Dion, Attys., Govt. Reg. & Labor Section, U. S. Dept. of Justice, Washington, D. C., for respondent.

Before HENDERSON, POLITZ and WILLIAMS, Circuit Judges.

WILLIAMS, Circuit Judge:

Ka Fung Chan petitions this court to reverse the Board of Immigration Appeals and order a reopening of his deportation proceedings. For the reasons stated below, we affirm the Board.

*Facts*

Ka Fung Chan, a citizen and native of China, entered the United States at Hono-

lulu, Hawaii on September 26, 1974, on a visa authorizing him to remain in this country until December 25, 1974. In November, 1974, Chan entered into a partnership operating the Hong Ning Company, a Los Angeles, California business importing Chinese specialty items. On February 15, 1975, Chan applied to the INS for adjustment of status to that of a permanent resident, seeking admission as a nonpreference immigrant exempt from the labor certification requirements of 8 U.S.C. § 1182(a)(14) on the ground that he was an alien investor within the meaning of 8 C.F.R. § 212.8(b)(4) (1974).[1] At the time of the application, nonpreference immigrant visas were available to natives of China. In May of 1975, however, visas became unavailable to natives of China and remained unavailable through the course of the proceedings below.

In October of 1975, Chan ended his association with the Hong Ning Company and invested in Al's Market, a retail grocery store. On October 9, 1975, Chan filed a second request for investor status (Form I–526) based on his investment in Al's Market. On July 30, 1977, Chan was interviewed by an INS immigration examiner.[2]

In about March of 1978, Chan ended his ties with Al's Market and, in April of 1978, moved to Atlanta, Georgia, which was the home of his brother, a permanent resident alien. On June 19, 1978, the INS located Chan in Georgia. At that time he advised the INS that he had withdrawn his investments from the Hong Ning Company and Al's Market. On June 30, 1978, Chan's application for adjustment of status was denied.[3]

At his deportation hearing on September 20, 1978, Chan conceded his deportability and did not seek to renew his application for adjustment of status. The immigration judge found Chan deportable, by Chan's own admissions, under 8 U.S.C. § 1251(a)(2) as an alien who remained in this country longer than authorized. The immigration judge granted Chan the privilege of voluntary departure until November 21, 1978. Chan did not appeal that decision.

On November 21, 1978, Chan moved to reopen the deportation proceeding. He alleged that since September 20, 1978, he had invested in the New Shanghai Mandarin House, a restaurant in Forest Park, Georgia. In the motion to reopen, he contended that his old and new investments evidenced a "consistent intent" to invest in the United States.

The immigration judge treated the motion to reopen as an application for adjustment of status and concluded that since nonpreference visas were unavailable on the date the motion was filed, Chan failed to establish prima facie eligibility for adjustment of status. The BIA dismissed Chan's appeal. It rejected his argument that he was entitled to a February, 1975 priority date, and stated the reasons for its conclusion as follows:

1. At the time of his original application for adjustment of status, Chan filed two forms with the district director: (1) an I–485, the basic application form for adjustment of status to that of a permanent resident; and (2) an I–526, the basic application form for investor status.

    For purposes of brevity, this opinion will use the term "application" to refer to the application for adjustment of status rather than the application for investor status.

2. Chan appeared in Los Angeles, California for an immigration interview and medical examination in July of 1977. He alleges that the interview focused on his second investment (in Al's Market), that he was asked to supply 1977 tax returns on that investment, and that his impression of the interview was that "every-

thing was in order" and that his application would be approved forthwith.

3. The district director denied Chan's application on the basis that he did not meet the investor requirements because his investments in the Hong Ning Company and Al's Market had terminated. The district director's report also stated that Chan was employed at a restaurant in Marietta, Georgia without a labor certification at the time INS officials located him in Georgia. Since the time of the district director's determination, Chan has consistently denied that he was ever employed at the restaurant in Marietta, Georgia. Since the issue whether Chan was employed at the restaurant is irrelevant to the issues before us, we express no view of the correctness of the district director's determination.

[Chan's] present investment in the New Shanghai Mandarin Restaurant is an investment of a totally different nature than his original investment in the Hong Ning Company, an operation with which [he] is no longer associated. Moreover, [Chan] has never had an approved investor application for his previous business. Consequently, he cannot now claim the benefit of a priority date on the basis of his prior, unrelated investment in a company with which he has ended his ties. *See generally Matter of Jo*, Interim Decision 2412 (BIA 1976).

Record on Appeal at 3.

*Issues on Appeal*

The parties agree that the most significant issue on appeal is whether the BIA properly held that Chan's motion to reopen constituted a *new* rather than a *renewed* application for adjustment of status. In addition, we must decide whether the INS is estopped from deporting Chan, and whether his Fifth Amendment due process rights were violated.

*Statutes and Regulations*

A brief overview of relevant statutes and regulations illuminates the BIA's reasoning in treating Chan's November 21, 1978 motion to reopen as a new rather than a renewed application. Section 212(a) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a), provides in pertinent part:

> Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States:
>
> .     .     .     .     .
>
> (14) Aliens seeking to enter the United States, for the purpose of performing skilled or unskilled labor, unless the Secretary of Labor has determined and certified to the Secretary of State and the Attorney General that (A) there are not sufficient workers who are able, willing, qualified . . . and available at the time of application for a visa and admission to the United States and at the place where the alien is to perform such skilled or unskilled labor, and (B) the employment of such aliens will not adversely affect the wages and working conditions of the workers in the United States similarly employed. . . .

According to 8 C.F.R. § 212.8(b), certain classes of aliens, including "investors," are exempt from the statutory labor certification requirements. In 1975, when Chan originally applied for adjustment of status, 8 C.F.R. § 212.8(b)(4) (1974) extended investor exemption from labor certification to:

> an alien who establishes on Form I–526 that he is seeking to enter the United States for the purpose of engaging in a commercial or agricultural enterprise in which he has invested, or is actively in the process of investing, capital totalling at least $10,000, and who establishes that he has had at least 1 year's experience or training qualifying him to engage in such enterprise.[4]

8 U.S.C. § 1255 is the basic statutory provision for adjustment of status to that of a permanent resident. It provides:

> The status of an alien who was inspected and admitted or paroled in the United States may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) *an immigrant visa is immediately availa-*

---

4. The "investor" exemption regulation was amended effective October 7, 1976. Under the current regulation, 8 C.F.R. § 212.8(b)(4) (1980), a labor certification is not required for:

> an alien who establishes on Form I–526 that he has invested, or is actively in the process of investing, capital totalling at least $40,000 in an enterprise in the United States of which he will be a principal manager and that the enterprise will employ a person or persons in the United States who are United States citizens or aliens lawfully admitted for permanent residence, exclusive of the alien, his spouse and children.

*ble to him at the time his application is filed.*

(Emphasis added.)

Under 8 C.F.R. § 245.2(a)(2) (1980), an application for adjustment of status is not properly filed unless the applicant establishes that he is entitled to a priority date for allotment of a nonpreference visa number in accordance with 8 C.F.R. § 245.1(g)(2) and that a visa is immediately available within the meaning of 8 C.F.R. § 245.1(g)(1). 8 C.F.R. § 245.1(g)(1) provides that "[a]n immigrant visa is considered available . . . if the . . . applicant has a priority date on the waiting list which is no later than the date shown in the Bulletin or the Bulletin shows that numbers for visa applicants in his category are current." 8 C.F.R. § 245.1(g)(2) governs the fixing of priority dates and provides:

> The priority date of an applicant who is seeking the allotment of a nonpreference immigrant visa number shall be fixed by the following factors, whichever is the earliest: . . . (ii) the date on which Form I-485 is filed if the applicant establishes that . . . the [labor certification provisions of 8 U.S.C. § 1182(a)(14)] do not apply to him . . . .

Finally, under 8 C.F.R. § 245.2, the district director has the authority to make an initial decision approving or denying the application for adjustment of status. 8 C.F.R. § 245.2(a)(4) provides that "no appeal shall lie from the denial of an application by the district director but such denial shall be without prejudice to the alien's right to renew his application in [deportation proceedings] . . . ."

*Standard of Review*

■ Before reaching the merits of Chan's contentions, it is important to set out the applicable standard of appellate review. A denial of a motion to reopen deportation proceedings is a final order of deportation reviewable in the Court of Appeals under 8 U.S.C. § 1105a. *Hernandez v. INS,* 539 F.2d 384 (5th Cir. 1976). Our

review of a denial of a motion to reopen is limited to determining whether the denial was an abuse of discretion. *See, e. g., Vazquez–Contreras v. INS,* 582 F.2d 334 (5th Cir. 1978); *Faddah v. INS,* 553 F.2d 491, 492 n.1 (5th Cir. 1977). However, where, as here, the denial rests on a finding that the alien is statutorily ineligible for adjustment of status, the Service's decision is subject to review for errors of law. *See Yui Sing Tse v. INS,* 596 F.2d 831 (9th Cir. 1979); *Marino v. INS,* 537 F.2d 686 (2d Cir. 1976).[5]

Because several of Chan's arguments on appeal involve the question whether the BIA's interpretation of agency regulations was legally erroneous, we state the standard that governs our review of an administrative agency's interpretation of its own regulations. The Supreme Court has consistently held that, in questions involving construction of rules and regulations by the promulgating agency, " 'the ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation.' " *United States v. Larionoff,* 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977), quoting *Bowles v. Seminole Rock Co.,* 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945); *see also INS v. Stanisic,* 395 U.S. 62, 89 S.Ct. 1519, 23 L.Ed.2d 101 (1969). The promulgating agency's construction of its own regulations is entitled to great weight and may be discounted only if clearly unreasonable. *Udall v. Tallman,* 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); *Refrigerated Transport Co. v. ICC,* 552 F.2d 1162, 1168–69 (5th Cir. 1977).

*New v. Renewed Application*

■■ We now reach the central issue in this appeal. Did the BIA err in holding that Chan's motion to reopen was a new rather than a renewed application for adjustment of status? If the motion was a new application, Chan is not entitled to relief because, on the date he filed the motion to reopen, nonpreference visas were

---

**5.** The agency's fact findings are conclusive "if supported by reasonable, substantial, and pro- bative evidence on the record considered as a whole." 8 U.S.C. § 1105a(a)(4).

unavailable for natives of China, and he failed to meet the requirement of 8 U.S.C. § 1255 that an immigrant visa be "immediately available" to him at the time of the filing of his application. If, on the other hand, the motion to reopen constituted a renewed application he would be entitled to a consideration of his qualifications as an investor under 8 C.F.R. § 212.8(b)(4) based on his Georgia investment. Assuming the Georgia investment met the "investor" requirements,[6] Chan would then be entitled to a priority date of February 15, 1975, making him statutorily eligible for discretionary adjustment of status.[7]

Chan advances three major arguments in support of his assertion that his motion to reopen constituted a renewed application. First, he contends that his priority date was fixed when he filed his first application so that, as long as his Georgia investment qualifies under the "investor" criteria, he is entitled to the early priority date on the basis of 8 C.F.R. § 245.2(a)(4), which allows him to "renew" his application in deportation proceedings. Second, he contends that the BIA erred in applying the precedent set in *Matter of Jo* to the facts of his case because *Matter of Jo* is factually distinguishable. Third, he contends that the principle established in *Matter of Jo*, even if applicable to the facts of his case, is invalid.

█ Chan's contention that an application resubmitted before the immigration judge constitutes a renewed rather than a new application is correct as a general rule.

In *Matter of Huang*, Interim Decision 2616 (BIA 1978), the alien filed an application based on his claim of investor status. The BIA originally ruled that the denial of the application by the district director and the initiation of deportation proceedings "effectively terminate[d]" the original application, and that a new "filing" was required before the immigration judge. On reconsideration, however, the BIA overruled its original decision and held that under a "longstanding," reasonable, and therefore a controlling agency interpretation of 8 C.F.R. § 245.2(a)(4), when Huang's application for adjustment of status had been denied by the district director, and Huang had resubmitted the application, based on the same facts, before an immigration judge in deportation proceedings, the resubmission did not constitute a new filing. The BIA said: "in reviewing an application for adjustment of status in deportation proceedings, pursuant to 8 C.F.R. § 245.2(a)(4), a respondent had satisfied the visa availability requirement of [8 U.S.C. § 1255] if a visa was immediately available to him when he originally filed his application with the District Director." *Id.* at 8.

The problem with Chan's reliance on *Matter of Huang* is that in *Matter of Huang*, the alien's claims to investor status (and, in turn, his applications for adjustment of status) were made on the basis of the *same* investment. The obvious distinction between *Matter of Huang* and this case is that Chan's original application was based

---

6. Though both parties have asserted that the issue in this case is whether Chan is entitled to a February, 1975 priority date, that characterization of the issue is not accurate. 8 C.F.R. § 245.1(g)(2) provides that the date on which Form I–485 is filed becomes the priority date "*if* the applicant establishes that . . . the provisions of [8 U.S.C. § 1182(a)(14)] do not apply to him. . . ." (Emphasis added) Therefore, the priority date of an "investor" is not fixed until the INS determines that the applicant meets the requirement of 8 C.F.R. § 212.8(b)(4). Since the BIA treated Chan's motion to reopen as a new application for adjustment of status, it never reached the question whether his Georgia investment met the "investor" criteria. Therefore, the issue on appeal is whether Chan's motion to reopen was properly charac-terized by the BIA as a new rather than a renewed application.

7. The fact that an applicant for adjustment of status meets the eligibility requirements of 8 U.S.C. § 1255 does not mean that he is automatically entitled to such relief. The Service has discretionary authority to deny adjustments of status even if the objective requirements of the statute are met. *See, e. g., Faddah v. INS*, 553 F.2d 491, 495 (5th Cir. 1977); *Jarecha v. INS*, 417 F.2d 220, 223 (5th Cir. 1969). Because the Service denied Chan's application for adjustment of status on the basis that he failed to meet the statutory requirements, this appeal does not involve the question whether the Service abused its discretionary authority to deny the application.

on his investment in the Hong Ning Company, while his later application, made at the time of the motion to reopen, was predicated on an entirely *different* investment and after a time span in which he had maintained no investment. Therefore, the BIA did not apply the *Matter of Huang* "renewal" principle to Chan's case; instead, it applied the precedent in *Matter of Jo*, Interim Decision 2412 (BIA 1975).

Chan contends that the BIA erred in relying on *Matter of Jo* in holding that his was a new rather than a renewed application. He argues that *Matter of Jo* is factually distinguishable or that it should be overruled.

In *Matter of Jo*, the alien submitted an application for adjustment of status to the district director on October 17, 1972. His claim to exemption from the labor certification requirement was predicated on his investment in a partnership that imported and distributed foodstuffs. The district director denied the application on the ground that a December, 1972 dissolution of the partnership had vitiated Jo's claim to investor status. On November 1, 1973, Jo filed with the district director an investor application predicated on a new investment. Later, at the deportation proceeding based upon the district director's denial of the first application, he attempted to renew his original application on the basis of the second investment. The immigration judge denied Jo's application for adjustment of status and found him deportable. On appeal, the BIA said that Jo never established an October 17, 1972 priority date because his application was denied by the district director. It held that his November, 1973 filing was a new rather than a renewed application "because the original application was denied and the present claim to investor status is predicated on a new business." *Id.* at 3. Thus, since visa numbers were not

current either at the time of the later application or at the time of its ruling, the BIA found Jo ineligible for adjustment of status.

Chan contends that the BIA erred in applying *Matter of Jo* to his case because *Matter of Jo* is factually distinguishable. He argues that, while the investor application in *Matter of Jo* was denied on the basis that the partnership had dissolved and Jo conceded that this was true, Chan has at all times since 1975 claimed a bona fide continuous investment in commercial enterprises in the United States that met the investor requirements.

We cannot accept this contention. The district director, the immigration judge, and the BIA found that Chan had liquidated each of his California investments before the district director denied his application. There is substantial evidence to support this finding. Indeed, Chan's attorney admitted at oral argument before this court that Chan sold his interest in Al's Market in March of 1978, and that he made no further investment until October of 1978, after his deportation proceedings had begun. It was on the basis of Chan's new investment that the motion to reopen the deportation proceedings was filed. Thus, the record clearly shows that there was a hiatus period of approximately six months in 1978 during which Chan maintained absolutely no investment.[8] In this case, as in *Matter of Jo*, the original application for adjustment of status was denied on the basis that the investment failed to meet the investor criteria. In both cases the alien sought to renew his original application in deportation proceedings on the basis of an entirely new investment (Jo in the original deportation proceeding, Chan in a motion to reopen after he had originally conceded deportability and failed to appeal). Chan's case closely parallels *Matter of Jo* and is not distinguishable.[9]

---

8. It is important to note that, under *Matter of Huang*, Chan had the right to renew his *original* application at his deportation hearing. Thus, he failed to pursue in the proper forum his claim that his continuous "intent" to invest entitled him to investor status.

9. Chan contends that the BIA "reversed" *Matter of Jo* in *Matter of Huang*, and that, under *Matter of Huang*, a second application for adjustment of status based on a different investment is a renewed application. Chan's position is untenable in light of the fact that *Matter of Huang* did not involve a situation in which the

Chan next contends that *Matter of Jo* is invalid. First, he argues that, by requiring an alien seeking investor status to refrain from changing investments at the cost of losing his opportunity for an early priority date, *Matter of Jo* impermissibly imposes an additional condition of eligibility upon aliens seeking nonpreference investor status.

Citing *Ruangswang v. INS*, 591 F.2d 39 (9th Cir. 1978), Chan argues that it is impermissible for the INS to condition his application for investor status upon the maintenance of a single investment, a requirement that does not appear in the investor criteria of 8 C.F.R. § 212.8(b)(4). In *Ruangswang*, an alien attempted to qualify as an "investor." Although the alien met all the objective requirements of the 1973 version of the investor regulation, the INS held that she was not qualified for investor status because she did not meet the criteria set out in *In re Heitland*, 14 I. & N. Dec. 563 (BIA 1974), *aff'd*, 551 F.2d 495 (2d Cir.), *cert. denied*, 434 U.S. 819, 98 S.Ct. 59, 54 L.Ed.2d 75 (1977), a BIA decision that construed the pre–1973 investor regulation. On appeal, the Ninth Circuit held that the INS could not validly apply the *Heitland* criteria to an applicant for investor status under the 1973 investor regulation. The court found that Mrs. Ruangswang clearly met the objective criteria of the 1973 regulation, and that, under the clear wording of the regulation, there was "no room for the agency to interpret the regulation so as to add another requirement." Further, the court said that the BIA could not, through adjudication, establish a new standard of conduct binding on Mrs. Ruangswang because "there was no reason for Mrs. Ruangswang to expect, when she sought to comply with the regulation, that the requirements for receiving an

adjustment of status would be anything other than the objective criteria set forth in the 1973 regulation." *Ruangswang*, 591 F.2d at 43–44.

Unlike *Ruangswang*, this case does not address an INS decision engrafting requirements over and above those listed in the investor regulation. The principle announced in *Matter of Jo* does not alter the substantive investor requirements in any way, nor does it interpret the meaning of those regulations. Rather, *Matter of Jo* constitutes an interpretation of the meaning of 8 C.F.R. § 245.2(a)(4), which provides that an alien may "renew" his application for adjustment of status in deportation proceedings. Thus, this case is clearly distinguishable from *Ruangswang*, in which the BIA sought to apply a substantive standard for investor eligibility that was not listed in the investor regulation. Therefore, Chan may not claim that *Matter of Jo* is in direct conflict with the investor regulation because it imposes an additional eligibility requirement.

Chan next contends that *Matter of Jo* is invalid because it conflicts with the policies that motivated the INS to create the investor exemption. He argues that one of the purposes of the investor exemption was to stimulate the American economy by encouraging foreign investment in this country and that, by "locking" aliens into a single investment that may prove unprofitable, *Matter of Jo* is inconsistent with the investor regulation.

We do not think that *Matter of Jo* stands for the broad proposition that an alien seeking investor status automatically loses the opportunity for an early priority date if he changes his investment at any time and for any reason. Rather, in our view, *Matter of*

---

alien sought to renew his application on the basis of an entirely different investment. In addition, a close examination of *Matter of Huang* belies Chan's contention, for in footnote 2 of *Matter of Huang*, the BIA, citing *Matter of Jo*, stated that "[i]f, on remand, [Huang] abandons his investor claim altogether and pursues, instead, a new claim of eligibility as the spouse of a lawful permanent resident . . . , his action may result in the creation of a new filing date."

Thus, the BIA's opinion in *Matter of Huang* not only expressly recognized the continuing validity of *Matter of Jo*, but, in addition, indicated that *Matter of Jo* may not be limited to changes in investments, but rather, might control any time an alien, after his original application is denied by the district director, alters the basis of his claim to eligibility for adjustment of status.

*Jo* stands for the much more limited proposition that, once an application for adjustment of status based on an original investment has been denied by the district director, and the correctness of the district director's determination with respect to the original investment is not disputed by the alien at deportation proceedings, a subsequent application based on an entirely new investment will be treated as a new rather than a renewed application, requiring the alien to prove visa eligibility at the time the new application is filed.

It is crucial to note the limits of *Matter of Jo*. *Matter of Jo* did not hold that if an applicant for investor status changes his investment *before* adjudication by the district director, the new investment will be treated as a new application, resulting in loss of the opportunity for an early priority date. It merely dealt with the consequences of a new claim of eligibility raised *after* denial of the original application by the district director. Nor does it appear that the BIA has attempted to extend the holding of *Matter of Jo* to a situation in which a new claim of eligibility arises before adjudication by the district director.[10] As heretofore applied, *Matter of Jo* operates to prevent renewal of a previous application for adjustment of status *only* if the alien had no adequate investment at the time his application was adjudicated by the district director.[11] Since we reject Chan's contention that *Matter of Jo* demands that an applicant for investor status be "locked" into a single, potentially unprofitable investment, we cannot say that *Matter of Jo* is inconsistent with the investor regulation.[12]

10. The circumstances of Chan's case lend some support to our view that the INS would not necessarily treat a new investment made before adjudication by the district director as an entirely new application, for there are indications that the INS did not treat Chan's change in investments from the Hong Ning Company to Al's Market as a new application. According to Chan, when he was interviewed in 1977 by an immigration examiner, the examiner did not indicate that Chan's change in investments terminated his opportunity for claiming a priority date based on the date of the filing of his original application. Indeed, the examiner requested copies of the tax returns for Al's Market, presumably for the purpose of verifying the amount of Chan's investment in that company. Second, though the district director clearly considered the status of each of Chan's California investments in adjudicating Chan's case, he gave no indication that he treated the second investment as a new application for adjustment of status, even though visas were unavailable to natives of China as of May, 1975, some five months *before* Chan invested in Al's Market. Chan's application was denied by the district director on the basis that he had *no* investment at the time of the adjudication of his application. In light of these circumstances, we think that if there had not been a six month hiatus, but Chan had immediately reinvested after closing out his investment, his application might have been approved by the district director.

11. Thus, we need not reach the question whether the INS could validly adopt, by adjudication or otherwise, a policy requiring every change in investments to be treated as a new application for adjustment of status.

12. The claim that the BIA's reason for adopting the principle announced in *Matter of Jo* was to "lock" aliens into a single investment is not necessarily accurate. Rather, *Matter of Jo* appears to be designed to avoid a significant problem that a more liberal policy of application renewal would engender: the creation of a perpetual early priority date for an alien who fails to maintain eligibility for adjustment of status while awaiting adjudication of his application.

In *Lee v. INS*, 576 F.2d 1380 (9th Cir. 1978), the Ninth Circuit upheld the BIA's treatment as a new application of a motion to reopen based on a new claim of eligibility for adjustment of status. There, the court aptly described the potential pitfalls of a contrary holding:

[I]f motions to reopen like Lee's can be unrealistically tied to previously denied applications, an alien can rely on the filing date of the denied application as an unchangeable visa priority date. Then, because the regulations impose no time limit on filing motions to reopen . . . , this priority date can be kept alive by submitting motions that allege factual developments arising at any time. This technique, if approved, can provide a formula for the alien to ignore valid orders of deportation while waiting for factual developments to improve.

*Id.* at 1381. Even if we agreed with Chan's contention that *Matter of Jo* "locks" aliens into one investment, we think that the valid policy considerations that led the BIA to adopt the principle announced in *Matter of Jo* would strongly militate against a finding that *Matter of Jo* conflicts with the investor regulation.

■ We also reject Chan's contention that the BIA could not validly apply the principle of *Matter of Jo* to his case because it did not follow the rulemaking requirements of the Administrative Procedure Act, 5 U.S.C. §§ 552, 553. An agency "is not precluded from announcing new principles in an adjudicative proceeding." *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 294, 94 S.Ct. 1757, 1771, 40 L.Ed.2d 134 (1974). "Adjudicated cases may and do . . . serve as vehicles for the formulation of agency policies, which are applied and announced therein." *NLRB v. Wyman–Gordon*, 394 U.S. 759, 765, 89 S.Ct. 1426, 1429, 22 L.Ed.2d 709 (1969). The Supreme Court has consistently held that "the choice made between proceeding by general rule or by individual *ad hoc* litigation is one that lies primarily in the informed discretion of the administrative agency." *SEC v. Chenery Corp.*, 332 U.S. 194, 203, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995 (1947); *accord, Bell Aerospace*, 416 U.S. at 294–95, 94 S.Ct. at 1771–72. Thus, the BIA, free of the rulemaking requirements of the APA, was empowered to announce its interpretation of the "renewal" provision of 8 C.F.R. § 245.2(a)(4) by adjudication in *Matter of Jo.*

■ Though "there may be situations where the [agency's] reliance on adjudication would amount to an abuse of discretion or a violation of the Act," *Bell Aerospace,* 416 U.S. at 294, 94 S.Ct. at 1771, this is not such a case. Unlike the alien in *Ruangswang v. INS*, Chan had adequate notice of the principle used to adjudicate his case. *Matter of Jo* was decided approximately two months before Chan invested in Al's Market. Thus, well before the time he chose to liquidate his investment in Al's Market and live in Georgia without any investment, Chan had notice that if his application for adjustment of status was properly denied by the district director for failure to maintain any type of investment, any subsequent application for adjustment of status based on a new investment would be treated as a new application. Since there was no decision of the BIA upon which Chan could have relied to his detriment,[13] he has failed to demonstrate an abuse of discretion.

Because Chan has failed to show that he was entitled under the applicable regulations to renew his application on the basis of his Georgia investment, and because he has not demonstrated that *Matter of Jo* is distinguishable or invalid, we conclude that the BIA did not err in treating his motion to reopen as a new application.[14]

*Estoppel*

■ Chan argues that the INS should be estopped from deporting him because (1) his

13. Chan argues that the BIA's first opinion in *Matter of Huang*, 16 I. & N. Dec. 358 (1977), led him to believe that he was free to change investments. He cites a portion of that opinion in which the BIA, discussing *Matter of Jo*, indicated that a change in investments was not critical to the question whether an application for adjustment of status filed at deportation proceedings was to be viewed as a new application. This argument overlooks the holding of the original opinion in *Matter of Huang*, which was that, once an application has been denied by the district director, *any* subsequent application, even if based on the same facts, constitutes a new application. Since Chan took the risk that his application would be denied by the district director for failure to maintain any investment, and since the original opinion in *Matter of Huang* would have prevented the renewal of his original application at deportation proceedings in any event, he cannot claim that he relied on that opinion to his detriment.

14. At oral argument, Chan raised an additional contention. The practice of the INS is to adjudicate investor applications by evaluating whether the investment, at the time of the *adjudication*, meets the applicable investor requirements. Chan contends, on the other hand, that an application for investor status must be adjudicated on the basis of the status of the investment at the time of the *filing* of the application, and that, as long as the investment meets the investor requirements at that time, a change in the original investment or a total liquidation of that investment should be irrelevant. Thus, Chan asserts that he should have been entitled to investor status if, on the day his application was filed, his original investment met the investor criteria–even if he had liquidated his investment the day after the application was filed and had never invested again. Chan failed to raise this argument in any of the proceedings below, and further it appears to be frivolous. An investment made one day and withdrawn the next would clearly not meet the requirements of the statute and regulations.

original application for adjustment of status was not adjudicated by the district director for more than three years; and (2) the immigration examiner's conduct in his 1977 interview led Chan to believe that he was free to change investments. He contends that if the INS had acted more quickly on his application, it would have been approved on the basis of his investment in Al's Market, and that if the immigration examiner had informed him that a change in investments would jeopardize his opportunity for an early priority date, he would not now be facing deportation. Chan failed to raise these claims before the BIA. Under 8 U.S.C. § 1105a(c), this failure to exhaust administrative remedies precludes review of his estoppel arguments in this court. *See Der–Rong Chour v. INS*, 578 F.2d 464, 468 (2d Cir. 1978), *cert. denied*, 440 U.S. 980, 99 S.Ct. 1786, 60 L.Ed.2d 239 (1979); *Cisternas–Estay v. INS*, 531 F.2d 155, 160 (3d Cir. 1976), *cert. denied*, 429 U.S. 853, 97 S.Ct. 145, 50 L.Ed.2d 127 (1977).

*Due Process*

Chan argues that two actions of the INS violated his Fifth Amendment due process rights. First, he contends that the immigration judge at his deportation proceeding violated due process when he denied Chan's request for a continuance. Second, he argues that the immigration judge, at the time of his motion to reopen, violated due process when he engaged in ex parte communications with a deportation officer. Totally aside from the doubtful merits of his contentions, each of these due process attacks fails because proof of a denial of due process in an administrative proceeding requires a showing of substantial prejudice. *See e. g., United States v. Lober*, 630 F.2d 335, 337 (5th Cir. 1980). Chan has not demonstrated prejudice.

According to counsel for Chan, Chan moved for a continuance at his deportation hearing because the INS had not responded to his request for documents from his immigration file concerning his 1975 application for adjustment of status. He now admits that he has received the requested informa-

tion. Yet he has not alleged that the information from his file would have altered in any way the judgment of the INS on either of his applications for adjustment of status. Thus, he has not demonstrated prejudice with respect to the denial of his request for a continuance.

Similarly, Chan has failed to make any allegation that the alleged ex parte communications between the immigration judge and the deportation officer at the time of the motion to reopen prejudiced the merits of his case. Therefore, he may not claim that his due process rights were violated.

*Conclusion*

In summary, we hold that the BIA acted properly in ruling that Chan's motion to reopen constituted a new rather than a renewed application for adjustment of status, based on the valid principle announced in *Matter of Jo*. We hold that Chan failed to raise his claims of estoppel before the BIA, precluding review in this court. Finally, we hold that Chan failed to show the substantial prejudice necessary to establish a due process violation.

Accordingly, the order of the BIA is AFFIRMED.