[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 12, 2010
JOHN LEY
CLERK

No. 09-12359
Non-Argument Calendar

_____

Agency No. A099-642-773

ELVIRA VIKTOROVNA BAZAROVA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(March 12, 2010)

Before BIRCH, HULL and ANDERSON, Circuit Judges.

PER CURIAM:

Elvira Viktorovna Bazarova, a native and citizen of Russia, petitions for review of the denial of her application for asylum and withholding of removal under the Immigration and Nationality Act ("INA"), and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"). Bazarova contends that the Board of Immigration Appeals ("BIA") erred in affirming the adverse credibility finding of the Immigration Judge ("IJ"). She also contends that the IJ violated her due process rights by denying her motion to continue. After careful review, we DENY the petition.

## I. BACKGROUND

Bazarova entered the United States on 14 June 2005 as a temporary nonimmigrant visitor with authorization to stay until 15 April 2006. In July 2006, she received a notice to appear charging her with removability under the INA for overstaying her visa.

Bazarova applied for asylum, withholding of removal, and CAT protection. She claimed that she was raped in May 2005 by a group of people called the Slepovtsy[1] because her boyfriend owed them money. On 20 February 2007, Bazarova appeared before an IJ and conceded her removability as charged.

---

[1] Although Bazarova identified the group as the "Slepovtsi" in her asylum application, she spelled the name as "Slepovtsy" during her asylum hearing.

Bazarova's counsel requested extra time to supplement her application. Accordingly, the IJ scheduled the hearing for 28 September 2007 and directed counsel to file any supporting evidence by 20 June 2007. The IJ also informed Bazarova's counsel that he could file a motion for more time if needed. No additional documents were ever filed by Bazarova.

At the merits hearing on 28 September 2007, Bazarova filed a motion to continue in order to obtain affidavits from a nurse and two Russian neighbors. The IJ denied the motion for lack of good cause as the motion gave no reason why the affidavits were not obtained during the past seven months. The IJ also noted that an interpreter had already been paid for and the IJ had been flown in from New Jersey for the hearing. Nevertheless, the IJ indicated that she might reconsider her ruling after hearing Bazarova's testimony about her efforts to secure the affidavits.

Bazarova then testified as follows. The Slepovtsy is a dangerous group of criminals akin to a mafia. Bazarova's boyfriend was a member of the Slepovtsy gang though she did not know this while they were dating. Bazarova never found out what type of work her boyfriend did because "[i]t's not that prestigious to talk about your jobs back home." Administrative Record ("AR") at 127. Bazarova was content that he made "good money" and could help support her and her parents. Id. at 127-29. Starting in November 2004, her boyfriend would come home "all beaten up." Id. at 114. After he disappeared in April 2005, Bazarova began

3

receiving threatening phone calls, warning her to either find her boyfriend or repay his debt. Scared, Bazarova moved into her sister's apartment in another part of the city.

On 15 May 2005, several people from the Slepovtsy broke into her sister's apartment, beat Bazarova, and raped her. Bazarova did not seek medical treatment because she was told that things would be worse for her if she went to any establishments. Instead, a nurse, who was a friend of Bazarova's sister, examined Bazarova. The next day, Bazarova reported the incident to the police, but they merely laughed at her and told her to disclose her boyfriend's location or give them the money he owed. Bazarova believes the police and the Slepovtsy are connected and "do everything together." Id. at 117.

Before she began dating her boyfriend in 2002, Bazarova was assaulted by the Slepovtsy one other time. The incident occurred during a birthday party at a restaurant wherein several people grabbed her and hit her head against some glass shelves. They wanted to "imprison" her, which means take her to a place where they could rape her, but a friend managed to convince them not to. Id.

After she left Russia, Bazarova learned of her boyfriend's death, but she knows nothing about the circumstances of his death or even when he died. She did not contact his family. Bazarova testified that the Slepovtsy have continued to threaten her parents, sister, and other relatives because they want to collect on her

4

boyfriend's debt and kill her. She is unwilling to return to Russia because she fears the police will catch her if she moves to another city and "imprison" her the same way the Slepovtsy do to other women.

With respect to her attempt to secure affidavits, Bazarova stated that the eight hour time difference made it difficult to contact witnesses in Russia and that many were too scared to help. She also testified that her phone had problems connecting to Russia for several months. Although she tried mailing a few items, mail delivery was slow and unreliable. She did not obtain affidavits from her parents because some friends had informed her that relatives could not serve as her witnesses.

In a written decision, the IJ first addressed Bazarova's motion to continue. The IJ rejected Bazarova's time-difference argument on grounds that she could have written letters, placed phone calls to pre-arrange conversations, or adjusted her schedule to the needs of her Russian witnesses. The IJ also found no convincing evidence to support her claim of mail and telecommunication problems. Finally, the IJ discounted as unreasonable Bazarova's reliance on her friends' advice that relatives could not be witnesses. The IJ concluded that Bazarova had not shown good cause for granting a continuance.

Next, the IJ determined that Bazarova was not credible. While Bazarova's testimony was consistent with her written statement, the brevity of her application

5

left open the possibility that Bazarova had enhanced her claim during the hearing. The IJ also found that Bazarova's testimony was vague and implausible at times concerning her purported boyfriend, the threats against her, and her decision to avoid seeking medical treatment. The IJ rejected her reasons for not obtaining corroborating evidence as "patently unreasonable excuses" which only added to her lack of credibility. Id. at 55. The IJ further determined that the 2006 Country Report on Human Rights Practices in Russia did not corroborate her claims of persecution. Though the report documented general police corruption, it did not mention the Slepovtsy or any police involvement in organized gang activity. Moreover, even if Bazarova was credible, the IJ found that her past persecution was not on account of any protected ground and that she did not have a well-founded fear of future persecution in Russia. The IJ ultimately denied asylum, withholding of removal, and CAT relief.

On appeal, the BIA adopted and affirmed the IJ's decision. In particular, the BIA found no clear error in the IJ's adverse credibility determination "based upon the various problems and inconsistences in the record" as detailed by the IJ. Id. at 3. The BIA further noted that Bazarova failed to provide corroborating evidence from her family even though that evidence was reasonably available. Additionally, the BIA found no error in the IJ's denial of the motion to continue given the lack of good cause for a continuance. In any event, the BIA noted that no prejudice had

6

been shown because the affidavits had still not been obtained.

In her pro se petition for review, Bazarova contends that the IJ's adverse credibility finding was not supported by specific details. She notes that the IJ faulted her for not corroborating her claims while at the same time denying her motion to continue which would have allowed her time to obtain corroborating evidence. Bazarova further contends that her persecution occurred on account of a protected ground. Specifically, she argues that the government was cooperating with the criminals in the Slepovtsy and that she is a female in a social group which was targeted. Finally, Bazarova asserts that the denial of her motion to continue violated her due process rights.

## II. DISCUSSION

### A. Denial of Asylum, Withholding of Removal, and CAT protection

When the BIA expressly adopts the IJ's opinion and reasoning, as here, we review both the IJ's and BIA's decision. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). We review credibility determinations under the substantial evidence test and "may not substitute [our] judgment for that of the [IJ] with respect to credibility findings." Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1255 (11th Cir. 2006) (per curiam) (quotation marks and citation omitted). As with all factual findings, we may reverse a credibility finding only if the record compels it. See id. Furthermore, we must view all evidence and draw all reasonable inferences

7

in favor of the agency's decision.  Id.

Bazarova's application is governed by the REAL ID Act, which permits an adverse credibility determination to be based on any inconsistencies, even ones that do not go to the heart of the applicant's claim, provided that such a determination is supported by the "totality of the circumstances."  8 U.S.C. § 1229a(c)(4)(C) (2005).  Relevant factors include an applicant's consistency on direct examination, consistency between the applicant's written and oral statements, and the absence of embellishments.  Ruiz, 440 F.3d at 1255.  An alien's testimony need not be corroborated if credible.  See id.  "Conversely, an adverse credibility determination alone may be sufficient to support the denial of an asylum application" where the applicant does not produce evidence other than her own testimony.  Id. (quotation marks and citation omitted).  The burden then shifts to the applicant to show that the adverse credibility finding was not supported by "specific, cogent reasons" or substantial evidence.  Id. (quotation marks and citation omitted).

Bazarova has not carried her burden in this case.  Contrary to her assertion, the IJ provided numerous examples of vague and inconsistent testimony in support of the adverse credibility finding.  For instance, the IJ noted that Bazarova never specified the number of times the Slepovtsy threatened her or her family, or how those threats were communicated each time.  Equally vague was her testimony concerning her relationship with her boyfriend, in that she did not know her

boyfriend's profession, that he was a gang member while they were dating, or the circumstances of his death. Moreover, Bazarova's failure to correspond to her boyfriend's family after his death was inconsistent with her claims that they had been romantically involved for a long period and often stayed with his parents. Another inconsistency surfaced in Bazarova's testimony that threats of reprisal kept her away from the hospital, but not from the police, after her rape. This inconsistency was more glaring given Bazarova's testimony that the police and the Slepovtsy "do everything together." AR at 117. In light of the substantial evidence supporting the IJ's adverse credibility finding, the record does not compel us to reverse that finding.

Furthermore, as the IJ found, Bazarova did not provide corroborating evidence to support her testimony nor establish good cause to excuse her failure to do so. Although the IJ considered the 2006 Country Report submitted by the government, that report did not substantiate Bazarova's claims of persecution by the Slepovtsy. Accordingly, the adverse credibility determination was sufficient to support the BIA's denial of her asylum application. See Ruiz, 440 F.3d at 1255. Given that withholding of removal under the INA and the CAT entails a higher standard of proof, we conclude that substantial evidence supports the denials of those claims as well. See Zheng v. U.S. Att'y Gen., 451 F.3d 1287, 1292 (11th Cir. 2006) (per curiam).

9

B.  Denial of Motion to Continue

We review for abuse of discretion an IJ's denial of a motion to continue. See Zafar v. U.S. Att'y Gen., 461 F.3d 1357, 1362 (11th Cir. 2006).  An IJ has discretion to grant a continuance in an immigration proceeding "for good cause shown."  8 C.F.R. § 1003.29 (2009).  In order to constitute a due process violation, the denial of the motion to continue must have substantially prejudiced the movant. See Ka Fung Chan v. INS, 634 F.2d 248, 258 (5th Cir. 1981) (concluding that the movant was not prejudiced by the denial of his request for a continuance because the information he needed would not have altered the judgment of the INS in any way); see also Frech v. U.S. Att'y Gen., 491 F.3d 1277, 1281 (11th Cir. 2007) ("To prevail on a procedural due process challenge, the petitioner must show that he was substantially prejudiced by the violation.").

No abuse of discretion has been shown in this case.  Bazarova had several months to submit evidence or file a motion to continue, but she instead waited until the day of the hearing to ask for a continuance.  Her motion gave no good cause to excuse her failure to obtain the affidavits during the previous seven months.  The IJ rejected Bazarova's proffered explanations at the hearing as non-credible, noting the existence of "calling cards, computer-assisted phone calling methods such as Skype, overnight delivery services that travel worldwide such as DSL, and alarm clocks that help a person to be awake at a time convenient to her witnesses."  AR at

10

The IJ also found unreasonable Bazarova's reliance on the advice of her friends, who were not attorneys, concerning her relatives' ability to submit affidavits on her behalf. Based on the record, we conclude that the IJ did not abuse her broad discretion in denying a continuance for lack of good cause, particularly in light of the pre-arranged presence of an interpreter and an IJ.

Moreover, we agree with the BIA that Bazarova has failed to demonstrate the requisite prejudice from the denial of her motion to continue. Although the affidavits might have provided some corroboration of her claims, they would not have eliminated the inconsistencies and other problems in her testimony which supported the adverse credibility finding. Absent a showing of substantial prejudice, her due process claim fails. See Ka Fung Chan, 634 F.2d at 258.

### III.  CONCLUSION

The record contains substantial evidence supporting the denial of asylum, withholding of removal, and CAT relief. We further conclude that the IJ's denial of Bazarova's motion to continue was not an abuse of discretion and did not violate Bazarova's due process rights. Accordingly, we DENY Bazarova's petition for review.

**PETITION DENIED.**