# United States Court of Appeals for the Fifth Circuit

———————

No. 21-60039

———————

United States Court of Appeals
Fifth Circuit

**FILED**

March 24, 2025

Lyle W. Cayce
Clerk

Jorge Armando Ayala Chapa,

*Petitioner*,

*versus*

Pamela Bondi, *U.S. Attorney General*,

*Respondent*.

———————————————————

Petition for Review of
the Board of Immigration Appeals
Agency No. A044 330 761

———————————————————

ON REMAND FROM

THE SUPREME COURT OF THE UNITED STATES

Before Elrod, *Chief Judge*, and Richman and Oldham, *Circuit Judges*.

Andrew S. Oldham, *Circuit Judge*:

We previously dismissed Jorge Armando Ayala Chapa's petition for review for lack of jurisdiction. *See Ayala Chapa v. Garland*, 60 F.4th 901, 903 (5th Cir. 2023) ("*Ayala Chapa I*"). That jurisdictional holding was commanded by longstanding Fifth Circuit precedent. *See id.* at 903–06 (collecting cases). In *Santos-Zacaria v. Garland*, 143 S. Ct. 1103 (2023), however, the

No. 21-60039

Supreme Court abrogated our longstanding precedent. We now consider Ayala Chapa's claim that the BIA acted *ultra vires*, and we hold that it is meritless.

I

We first (A) discuss the initial proceedings against Ayala Chapa. We next (B) discuss his first appeal to this court. Then we (C) turn to the Supreme Court's disposal of his appeal and its opinion in *Santos-Zacaria*.

A

Jorge Armando Ayala Chapa is a native and citizen of Mexico. Between 2005 and 2020, he was arrested for and convicted of several crimes. In 2005, he was arrested for possession of marijuana, charged as a juvenile, and granted deferred probation. In 2006, he was arrested for possession of marijuana and unlawfully carrying a weapon. Those charges were subsequently dismissed. In 2011, he pled guilty to delivering cocaine on two separate occasions. In 2017, he was convicted of marijuana possession. In 2020, he was convicted of possession of a controlled substance.

On February 27, 2020, the Department of Homeland Security served him with a notice to appear and charged him with removability under the Immigration and Naturalization Act ("INA"). 8 U.S.C. § 1227(a)(2)(B)(i). He was eligible for removal as an alien convicted of a "violation . . . relating to a controlled substance." *Ibid.* Ayala Chapa admitted the factual allegations and conceded the charge of removability.

Ayala Chapa sought cancellation of removal under the INA, or withholding of removal under the INA and the Convention Against Torture. An Immigration Judge ("IJ") denied Ayala Chapa's application and ordered his removal to Mexico. He appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), which dismissed the appeal. BIA Member Megan

2

No. 21-60039

Foote Monsky issued the decision. Ayala Chapa timely filed a motion for reconsideration of the BIA decision and an emergency motion to stay his removal. The BIA denied both.

B

Ayala Chapa petitioned this court for review of the BIA's dismissal order. He also petitioned for review of the BIA's denial of his motion for reconsideration. Both petitions were consolidated into this case. *See Ayala Chapa I*, 60 F.4th at 903.

Ayala Chapa first sought review of the BIA's decision to deny his cancellation of removal claim. We dismissed this claim for lack of jurisdiction. *Id.* at 903–04 (describing INA's jurisdiction strip over such judgments and the lack of legal standards under which to review them). He next argued that the BIA acted *ultra vires* in ordering his removal because a temporary board member issued the order after her temporary term expired. We dismissed this claim for lack of jurisdiction because he failed to meet the INA's exhaustion requirement, 8 U.S.C. § 1252(d)(1), by raising the *ultra vires* claim for the first time on appeal. *Ayala Chapa I*, 60 F.4th at 905 (describing exhaustion requirement as applied to alleged procedural defects). Finally, we dismissed Ayala Chapa's challenge to the BIA's denial of his motion for reconsideration because he forfeited the necessary arguments to sustain the challenge. *Id.* at 905–06 (describing forfeiture of prejudice and termination arguments).

C

Ayala Chapa petitioned for a writ of certiorari from the Supreme Court. In the interim, the Court decided *Santos-Zacaria*. In that case, as relevant here, the Court held the exhaustion requirement set forth in § 1252(d) of the INA non-jurisdictional. 143 S. Ct. at 1111–12. Rather, it is "a quintessential claim-processing rule." *Id.* at 1112. As a consequence, the Court granted Ayala Chapa's petition for certiorari, vacated the panel

3

No. 21-60039

judgment, and remanded "for further consideration in light of *Santos-Zacaria*." *Chapa v. Garland*, 144 S. Ct. 56 (2023) (mem.).

On remand, we directed the parties to submit supplemental letter briefing on the impact of *Santos-Zacaria*. The parties agree, as do we, that *Santos-Zacaria* abrogates only the panel's dismissal of Ayala Chapa's *ultra vires* claim for failure to exhaust administrative remedies by first filing a motion for reconsideration.[1] We consider only his claim that the BIA acted *ultra vires* when temporary Board Member Monsky ordered his removal.[2]

## II

We first (A) explain that Ayala Chapa's *ultra vires* claim fails because he cannot show a statutory violation. We then (B) explain that even if a statutory violation were not required, he has not shown a regulatory violation either.

## A

An *ultra vires* claim generally requires proof that an agency exceeded the bounds of its *statutory* authority. An agency acts *ultra vires* when it "go[es] beyond what Congress has permitted it to do." *City of Arlington v.*

---

[1] "When a case is remanded from the Supreme Court, with the exception of that which we are mandated to review, our previous rulings are the law of the case and will not now be reconsidered." *United States v. Croft*, 87 F.4th 644, 647 (5th Cir. 2023) (cleaned up). The Supreme Court's holding in *Santos-Zacaria* that § 1252(d)(1) is not jurisdictional implicates only Ayala Chapa's previously dismissed *ultra vires* claim. His cancellation-of-removal and *Niz-Chavez* claims were properly dismissed in *Ayala Chapa I*, and we do not address them further here.

[2] Despite our general lack of jurisdiction over denials of discretionary relief and orders of removal issued against criminal aliens, *see* 8 U.S.C. § 1252(a)(2)(B)–(C), we retain jurisdiction to review this claim because it implicates a reviewable question of law: "whether a BIA decision was made *ultra vires*." *Nastase v. Barr*, 964 F.3d 313, 318 (5th Cir. 2020)*;see also* 8 U.S.C. § 1252(a)(2)(D).

No. 21-60039

*FCC*, 569 U.S. 290, 297–98 (2013)*;see also id.* at 317 (Roberts, C.J., dissenting) ("Agencies are creatures of Congress; an agency literally has no power to act unless and until Congress confers power upon it." (cleaned up)). An agency's violation of its *regulations* may support a procedural due process claim. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *cf. also Ka Fung Chan v. INS*, 634 F.2d 248, 258 (5th Cir. 1981). But we are unaware of a case holding that an agency acts *ultra vires* when it strays beyond its regulations.[3]

Ayala Chapa nowhere argues that BIA decision exceeded the bounds of any statute. Instead, he claims the Board's order violated federal regulations because of the alleged deficiency caused by Board Member Monsky's temporary status. *See* 8 C.F.R. § 1003.1(a)(4). Such a regulation-based claim could give rise to a violation of the Due Process Clause—but Ayala Chapa does not raise any such constitutional claim.

We need not hold that a statutory violation is necessary in every case because, in this one, the relevant statutes make clear that the BIA did not act *ultra vires*. The Attorney General has statutory authority to reappoint temporary board members pursuant to 8 U.S.C. § 1103(g)(1). That provision grants to the Attorney General the same "authorities and functions" previously exercised "by the Attorney General with respect to the Executive Office for Immigration Review, on the day before the effective date of the

---

[3] While it is a long-settled principle of administrative law that agencies must follow their own regulations, *see Ariz. Grocery Co. v. Atchison, T. & S.F. Ry. Co.*, 284 U.S. 370, 389 (1932), particularly "[w]here the rights of individuals are affected," *see Morton v. Ruiz*, 415 U.S. 199, 235 (1974), the proper vehicle for such claims is the Due Process Clause, *see Accardi*, 347 U.S. at 268; *Ka Fung Chan*, 634 F.2d at 258. But even if Ayala Chapa had brought a procedural due process claim, he has not alleged substantial prejudice. "To prove that administrative proceedings should be invalidated for violation of regulations, an alien must show substantial prejudice." *Molina v. Sewell*, 983 F.2d 676, 678 (5th Cir. 1993).

No. 21-60039

Immigration Reform, Accountability and Security Enhancement Act of 2002."[4] *Ibid.* The Attorney General has exercised the power to reappoint temporary board members since 1998. *See* Expanding the Size of the Board of Immigration Appeals, 89 Fed. Reg. 22630, 22631 (Apr. 2, 2024) (to be codified at 8 C.F.R. pt. 1003) ("Notably, since 1998, eligible individuals have regularly been designated and then re-designated as temporary Board members for consecutive 'terms' of six months or less.").

Monsky's reappointment paperwork confirms that she was properly reappointed by the Attorney General pursuant to his authority under 8 U.S.C. § 1103(g)(1). And our precedent dictates that reappointment is subject to judicial notice. *Carreon v. Garland*, 71 F.4th 247, 253 & n.4 (5th Cir. 2023) (taking judicial notice of temporary BIA members' reappointment paperwork); *Flores-Valle v. Garland*, No. 20-61130, 2023 WL 5133483, at *1 (5th Cir. Aug. 10, 2023) (per curiam) (same). Because Board Member Monsky had been reappointed by the Attorney General at the time of Ayala Chapa's removal order, that order is consistent with the Attorney General's statutory authority. So the *ultra vires* claim accordingly fails.

---

[4] This statutory reference to the "effective date" gives rise to some ambiguity because the referenced statute was never enacted. *See* Immigration Reform, Accountability, and Security Enhancement Act of 2002, S. 2444, 107th Cong. § 1 (2002); *id.* § 121 (specifying effective date 18 months after date of enactment). Some evidence suggests that this language is best read as a reference to the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135. *See, e.g.*, Aliens and Nationality; Homeland Security; Reorganization of Regulations, 68 Fed. Reg. 9824, 9824 (Feb. 28, 2003) (to be codified at 28 C.F.R. pt. 200); 1 Shane Dizon & Pooja Dadhania, Immigration Law Service § 1:209 (2d ed. 2024). Other evidence points to a proposed yet unenacted Senate Amendment that would have inserted a "Division B" in the Homeland Security Act of 2002 (consisting of sections 1001–1321 of the Amendment) titled the "Immigration Reform, Accountability, and Security Enhancement Act of 2002." S. Amdt. 4471 to H.R. 5005, 107th Cong. § 2 (2002). We take no position on this interpretive question because the Attorney General's power to reappoint temporary board members predates the effective dates derived from all plausible readings.

6

B

In any event, Ayala Chapa cannot show a violation of any regulation. The regulation in effect at the time of his removal order allowed the appointment of "temporary Board members for terms not to exceed six months" by the Director of the Executive Office for Immigration Review ("EOIR").[5] 8 C.F.R. § 1003.1(a)(4) (2020). And those terms could be renewed. *See Carreon*, 71 F.4th at 253–54. Thus, under *Carreon*, neither the Attorney General nor the BIA nor the EOIR violated any regulation.

Ayala Chapa urges us to ignore *Carreon*, as the petitioner in that case conceded the Attorney General's power to reappoint temporary board members while Ayala Chapa "makes no such concession." Appellant's Supplemental Letter Br. at 4. We are not so easily persuaded. That is for two reasons.

First, the regulation's plain text applies only to the EOIR Director's authority to appoint BIA members. It does not limit the Attorney General's power to do so under § 1103(g)(1), but merely prescribes a delegation of his authority to the EOIR Director. *Cf. Carreon*, 71 F.4th at 253–54 ("In other words, [Carreon's] argument hinges on whether the Attorney General properly delegated his renewal authority to the Director through regulation."). Because Attorney General Barr, rather than the EOIR Director, reappointed Monsky, Ayala Chapa's "argument collapses." *Id.* at 254. *Accord Salomon-Guillen v. Garland*, 123 F.4th 709, 716 (4th Cir. 2024) (holding that 8 C.F.R. § 1003.1(a)(4) "didn't apply to the Attorney

---

[5] This section has since been amended to explicitly authorize renewable terms for BIA members. *See* Expanding the Size of the Board of Immigration Appeals, 89 Fed. Reg. at 22636. All textual references, however, refer to and quote the regulatory language in effect at the time Board Member Monsky ordered Ayala Chapa's removal.

General""); *Punin v. Garland*, 108 F.4th 114, 129 (2d Cir. 2024) (holding that the regulation "nowhere cabined the Attorney General's authority"); *Bernardo-De La Cruz v. Garland*, 114 F.4th 883, 891–92 (7th Cir. 2024) (holding that the regulation does not "strip[] the Attorney General of his appointment power"). Monsky's appointment by the Attorney General thus did not violate the regulation at issue.

Second, the regulation's plain text refers to "terms" and contains no limitation on renewal or eligibility to serve multiple terms. *See* 8 C.F.R. § 1003.1(a)(4) (2020). The absence of explicit authorization for multiple terms does not concern us. *Cf. Rivera v. Garland*, 108 F.4th 600, 606 (8th Cir. 2024) ("There is no ambiguity in the text of the regulation; it simply does not address the issue of additional terms. Thus, again, we conclude that the regulation 'just means what it means.'" (quoting *Kisor v. Wilkie*, 588 U.S. 558, 574–75 (2019))). In practice, temporary board members have been reappointed since 1998 when the regulation was first modified to limit individual terms to six-months as opposed to indefinite ones. *See* Expanding the Size of the Board of Immigration Appeals, 89 Fed. Reg. at 22631. We decline Ayala Chapa's invitation to upend this longstanding agency practice.

\* \* \*

For the foregoing reasons, Ayala Chapa's petition for review of his *ultra vires* claim is DENIED.