**Salim MAWJI, Petitioner,**

v.

**IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.**

**No. 81–7376.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 5, 1982.

Decided March 12, 1982.

Robert-Grant Wealleans, Popkin, Shamir & Golan, Los Angeles, Cal., for petitioner.

Peter R. Osinoff, Asst. U. S. Atty., Los Angeles, Cal., for respondent; Dzintra I. Janavs, Asst. U. S. Atty., Los Angeles, Cal., on brief.

Before WRIGHT and FLETCHER, Circuit Judges, and MEREDITH,* Senior District Judge.

WRIGHT, Circuit Judge:

Salim Mawji entered the United States in August 1973 as a nonimmigrant visitor and remained beyond the time authorized. In June 1974 he submitted an application for permanent resident status as an investor. The District Director, Immigration and Naturalization Service, denied the application and instituted deportation proceedings. Mawji abandoned the application.

At his deportation hearing, he submitted a new application for investor status, claiming a $12,000 investment in a fast food restaurant. At the time, nonpreference visas were available, and an alien was eligible for investor status by investing more than $10,000. 8 C.F.R. § 212.8(b)(4) (1974).[1] The immigration judge granted the government's request for a continuance to permit investigation of the investment.

Before the hearing reconvened, Mawji sold the restaurant and, about a month after the sale, reinvested the proceeds in a grocery store. The immigration judge held that the sale of the restaurant and subsequent purchase of a grocery store required a new application for adjustment of status, with the concomitant loss of the earlier priority date based on the prior petition.

By that time, no nonpreference visas were available, and the regulation for investor status required a $40,000 investment. 8 C.F.R. § 212.8(b)(4) (1976).[2] The immigration judge refused to adjudicate the application because Mawji failed to meet the new requirements. The Board of Immigration Appeals dismissed the appeal, and Mawji has appealed to this court. 8 U.S.C. § 1105a (1976).

■■ The immigration judge and BIA refused to adjudicate Mawji's petition as a matter of law. No discretion was involved. In such a posture, the decision is subject to review on appeal for errors of law. *Yui Sing Tse v. INS*, 596 F.2d 831, 834 (9th Cir. 1979); *accord, Pei-Chi Tien v. INS*, 638 F.2d 1324, 1327 (5th Cir. 1981). Nevertheless, the BIA's interpretation of INS regulations deserves great deference, and controls unless plainly erroneous or inconsistent with the regulations. *United States v. Larionoff*, 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977).

■ We must decide whether Mawji's petition for investor status based on his grocery store constituted a *new* application or merely a continuation of the application based on the restaurant. If he must file a new application, his investment is facially

---

* Of the Eastern District of Missouri.

1. 8 C.F.R. § 212.8(b)(4) (1974) reads:

an alien who establishes on Form I–526 that he is seeking to enter the United States for the purpose of engaging in a commercial or agricultural enterprise in which he has invested, or is actively in the process of investing, capital totalling at least $10,000, and who establishes that he has had at least 1 year's experience or training qualifying him to engage in such enterprise.

2. 8 C.F.R. § 212.8(b)(4) (1976) reads:

an alien who establishes on Form I–526 that he has invested, or is actively in the process of investing, capital totalling at least $40,000 in an enterprise in the United States of which he will be a principal manager and that the enterprise will employ a person or persons in the United States who are United States citizens or aliens lawfully admitted for permanent residence, exclusive of the alien, his spouse and children.

inadequate because he must meet the investor regulations in effect at the time he *files.* *See* 8 C.F.R. § 245.1(g)(2)(ii) (1980).[3]

The immigration judge relied on the BIA's decision in *Matter of Jo*, 15 I. & N. Dec. 401 (BIA 1975). In *Jo*, the petitioner applied for adjustment of status as an investor, but his petition was denied because the partnership upon which his application was based had been dissolved.

After the denial, he invested in a new business. The BIA held the application based on this new business to be a new application. It reasoned:

> We regard the respondent's present application not as a renewal of his earlier application, but as a new application for adjustment of status *because the original application was denied* and the present claim to investor status is predicated on a new business.

*Id.* at 402 (our emphasis).

The decision in *Matter of Jo* rests expressly on a previous denial of the application.[4] We find persuasive the Fifth Circuit's explanation of *Jo*. In *Chan v. INS*, 634 F.2d 248 (5th Cir. 1981), the court stated:

> It is crucial to note the limits of *Matter of Jo. Matter of Jo* did not hold that if an applicant ... changes his investment *before* adjudication ..., the new investment will be treated as a new application, resulting in loss of the opportunity for an early priority date. It merely dealt with the consequences of a new claim of eligibility raised *after* denial of the original application .... As heretofore applied, *Matter of Jo* operates to prevent renewal of a previous application for adjustment of status *only* if the alien had no ade-

quate investment at the time his application was adjudicated ....

*Id.* at 256 (emphasis in original).

This interpretation of *Jo* is supported by the BIA's opinion in *Matter of Ro*, 16 I. & N. Dec. 93 (BIA 1977). In *Ro*, the BIA distinguished *Jo*, holding that the investors could claim their original priority date "even though they now claim ... on the basis of an investment different from that which supported their original applications for immigrant visas." *Id.* at 95. The distinguishing point in *Matter of Ro* is that a consular official granted the investors a priority date, which in effect is a prior *approval* of the application.

■ Mawji submitted an application for adjustment of status as an investor. If it had been denied, his subsequent investment would have required a new application and satisfaction of the new requirements. *Matter of Jo*, 15 I. & N. Dec. 401 (BIA 1975). If it had been approved, the change in investment would not have affected his eligibility. *See Matter of Ro*, 16 I. & N. Dec. 93 (BIA 1977). But the application was neither approved nor denied. It was not adjudicated.

The immigration judge's refusal to adjudicate Mawji's application based on *Matter of Jo* was erroneous. As applied to date, *Jo* prevents retention of an earlier priority date only when the previous application has been denied. Mawji's application had not been denied.

The BIA affirmed the immigration judge, but it failed to offer a clear rationale. It seems to decide the case by distinguishing *Matter of Ro*, 16 I. & N. Dec. 93 (BIA 1977), upon which Mawji relies. In the absence of any affirmative basis for its decision different from that offered by the immigration judge, the opinion must be read to rely on

---

**3.** Moreover, because visas are no longer available, Mawji's petition cannot even be submitted. 8 C.F.R. § 245.2(a)(2) (1980).

**4.** After stressing the previous denial, the BIA includes a reference to the application's basis in a new investment. An application that has been denied by the district director is con-

sidered a renewal when resubmitted before an immigration judge in deportation proceedings. *Matter of Huang*, 16 I. & N. Dec. 358 (BIA 1977); 8 C.F.R. § 245.2(a)(4) (1980). We read the reference in *Jo* to the application's basis in a new business to distinguish a denial that still is subject to assertion at deportation proceed-

the same grounds.[5] As such, it also is erroneous.

In *Lee v. INS*, 576 F.2d 1380 (9th Cir. 1978) (per curiam), this court described the policy considerations that support treating as new applications claims to eligibility asserted after initial denial. Considering an alien's attempt to reopen proceedings in which her application for investment status was denied, this court wrote:

> [I]f motions to reopen ... can be unrealistically tied to previously denied applications, an alien can rely on the filing date of the denied application as an unchangeable visa priority date. Then, ... this priority date can be kept alive by submitting motions that allege factual developments arising at any time. This technique, if approved, can provide a formula for the alien to ignore valid orders of deportation while waiting for factual developments to improve.

*Id.* at 1381.

Mawji contends only that he is entitled to an adjudication of his first application and, if it satisfies the requirements, that the reinvestment should not affect his priority date. However validly the policy reasons identified in *Lee* may justify treating an application following a denial as a new application, they fail to support an extension of *Matter of Jo* to foreclose a change in investments before adjudication.

The BIA here has attempted to extend *Matter of Jo* beyond its proper scope. Limited both by the BIA's subsequent opinions, *e.g., Matter of Ro*, 16 I. & N. Dec. 93 (BIA 1977), and by judicial interpretation, *e.g., Chan v. INS*, 634 F.2d 248 (5th Cir. 1981), the limitation of *Jo* to applications that already have been denied must be con-

sidered a longstanding and reasonable agency interpretation. As such it is binding on the BIA. *See Chan v. INS*, 634 F.2d at 253.

We vacate the decision of the BIA, which held that a petition for investor status, based on an investment different from that identified in a previously submitted application, *as a matter of law* constitutes a new petition.

By so holding, we do not foreclose the possibility that on the facts, Mawji's purchase of the grocery store with the proceeds from the sale of his restaurant would require a new application.

 The BIA must determine whether the alien has reinvested or is in the process of reinvesting in an enterprise in which he intends to engage and for which he has the requisite experience or training. The regulations should not be read to lock the alien into his original investment. He should not be foreclosed from improving or changing his original investment and conducting his affairs in a reasonable manner to effect a reinvestment, but in so doing he must continue to evince by his conduct an intent to comply with the purposes of the statute and regulations.

If the reinvestment fairly meets these standards, the BIA must adjudicate Mawji's original application, submitted on October 1, 1976,[6] under the statutes and regulations then pertaining.

VACATED and REMANDED.

---

ings from one that has been denied without further administrative recourse.

5. The government's brief supports this view. It asserts that "the BIA expressly refused to rely on *Ro*, but relied on *Matter of Jo*."

6. We find precedent for this procedure in *Matter of Kumar*, Int. Dec. 2777 (BIA 1980). The petitioner in *Kumar* had invested and filed an application, but before it was adjudicated he changed investments, this time after the $40,000 requirement became effective. The BIA rejected his claim that the original application

entitled him to eligibility under the prior standards, but not because he changed investments.

The result in *Kumar* rests on the BIA's finding that the *original* application would not have satisfied even the more lenient standards. It wrote:

> One cannot claim a lingering entitlement to have an investment made after the regulatory change reviewed under pre-regulatory change standards *when the initial application never satisfied those earlier standards.*

*Id.* slip op. at 4 (our emphasis).