**YUNG TSANG CHIU and Su Lau, Petitioners,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, Board of Immigration Appeal, Respondents.**

No. 82–3137.

United States Court of Appeals, Sixth Circuit.

Argued April 13, 1983.

Decided May 19, 1983.

W. Vincent Rakestraw (argued), Chester, Hoffman & Willcox, Bruce I. Roth, Columbus, Ohio, for petitioners.

Lloyd A. Warfield, INS, Christopher Barnes, U.S. Atty., Nicholas J. Pantel, Asst. U.S. Atty., Cincinnati, Ohio, Lauri Steven Filppu, Robert Kendall, Jr. (argued), General Litigation and Legal Advice Section, Crim. Div., Dept. of Justice, Washington, D.C., for respondents.

Before MARTIN and CONTIE, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

PER CURIAM.

Yung Tsang Chiu and Su Lau, husband and wife, seek review of an order of the Board of Immigration Appeals affirming the denial of their renewed applications for adjustment of alien status to permanent residents. The Board's order is affirmed.

Chiu initially entered this country as a nonimmigrant visitor on June 30, 1973 authorized to remain until August 29, 1973. On April 28, 1975, he petitioned the Immigration and Naturalization Service for an adjustment to permanent resident status, seeking admission as a nonpreference immigrant exempt from the labor certification requirements as an alien investor.

8 U.S.C. § 1255 is the basic statutory provision governing adjustment of status to permanent residency. It provides:

> The status of an alien who was inspected and admitted or paroled in the United States may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

As a nonpreference visa applicant, see 8 U.S.C. § 1153(a)(8), Chiu's eligibility for an immigrant visa and his admissibility for permanent residence is dependent upon proof of either labor certification, 8 U.S.C. § 1182(a)(14), or exemption from certification, 8 C.F.R. 212.8(b). At the time his application was filed, 8 C.F.R. 212.8(b)(4) exempted

> an alien who establishes on Form I–526 that he is seeking to enter the United States for the purpose of engaging in a commercial or agricultural enterprise in which he has invested, or is actively in the process of investing, capital totalling at least $10,000, and who establishes that he has had at least 1 year's experience of training qualifying him to engage in such enterprise.

To establish the immediate availability of a visa, see 8 U.S.C. § 1255(a)(3), supra, an applicant like Chiu must show a *priority date* "on the waiting list which is no later than the date shown in the [Department of State Visa] Bulletin or the Bulletin shows that numbers for visa applicants in his category are current." 8 C.F.R. § 245.1(g)(1). 8 C.F.R. § 245.1(g)(2) governs the fixing of priority dates and provides:

> The priority date of an applicant who is seeking the allotment of a nonpreference immigrant visa number shall be fixed by the following factors, whichever is the earliest: . . . (ii) the date on which Form I–485 is filed *if* the applicant establishes that . . . the labor certification provisions of 8 U.S.C. § 1182(a)(14) do not apply to him. . . .

(emphasis added).

Although an applicant may be denied resident status by the district director, his

application may be "renewed" before an immigration judge during deportation hearings. 8 C.F.R. § 245.2(a)(4). If an application is renewed, the original priority data is retained. *Matter of Huang,* 16 I & N Dec. 361.1 (BIA 1978).

In his April 28, 1975 application, Chiu sought labor certification exemption based upon his $10,000 investment in a Springfield, Ohio Chinese restaurant, the Panda. At that time, nonpreference immigrant visas were available. In January of 1976, prior to adjudication of his application and prior to regulation changes tightening the investor requirements and rendering nonpreference visas unavailable, Chiu invested $40,000 in the China Gate, a Chinese restaurant in Reynoldsburg, Ohio. This investment was not formally included in his application, however. Although referred to in a 1976 tax return submitted in support of his application and reported by Chiu to an INS investigator during a May 16, 1977 pre-adjudication investigation, the China Gate investment has never been included in either a new or amended I–526 form. *See* 8 C.F.R. § 212.8(b)(4), *supra.*

On April 21, 1978, the district director denied Chiu's application. By that time, however, Chiu had sold his interest in the Panda. In deportation hearings commenced on July 24, 1979, Chiu sought to renew his petition. In support, he argued that the China Gate and the Panda, both Chinese restaurants, were part of a continuous investment. Despite his failure to formally amend his I–526 form to reflect the later investment, he continued, it should nevertheless be considered as part of the original application for the dual purpose of retaining his April, 1975 priority date and for determining his investor status.

The immigration judge disagreed. If Chiu was an investor in 1975, he held, it would be solely because of the Panda. However, the sale of the Panda mooted the question. In effect, the application was withdrawn and the priority date lost. Because the China Gate was never formally incorporated into the application, it could not save the earlier application. "Mere knowledge of the government," said the judge, "is insufficient to come within the purview of the requirements of such Application." The judge ordered Chiu's deportation in the event he did not voluntarily depart within thirty days. The Board, for similar reasons, dismissed the appeal.

Because the decisions of the judge and Board were not decisions on the merits but rather determinations that Chiu was statutorily ineligible for status adjustment, their decisions are open to our review for errors of law. *See Aiyadurai v. INS,* 683 F.2d 1195, 1199 (8th Cir.1982); *Pei-Chi Tien v. INS,* 638 F.2d 1324, 1327 (5th Cir.1981); *Mawji v. INS,* 671 F.2d 342, 343 (9th Cir. 1982). As a general rule of law, there appears to be nothing in either the regulations, the Board's decisions, or the opinions of the courts to prevent an investor from changing investments subsequent to application but prior to adjudication [1]. That is particularly true when, as here, the second investment is of the same character and, if submitted as a separate application, would have established a priority date for which nonpreference immigrant visas were available. *See Matter of Jo,* 15 I & N Dec. 401 (BIA 1975) (second investment made *after* adjudication will not renew application); *Chan v. INS,* 634 F.2d 248, 255–256 (5th Cir.1981); *Mawji,* 671 F.2d at 344. Indeed, to hold otherwise would be contrary to the purpose behind the investor exemption. However, the regulations do specifically state that "an alien who establishes *on Form I–526* that ..." his investment meets the relevant criteria is exempt from the labor certification requirement. 8 C.F.R. § 212.8(b)(4) (emphasis added). Moreover, we must accord the INS' interpretation of its regulations great weight, to be discount-

1. Although the INS claims that any decision based on the China Gate follows adjudication of the 1975 application and cannot, therefore, be considered a renewal of that application, that analysis somewhat begs the question.

Were Chiu's arguments accepted by us and the China Gate investment considered in the adjudication of the 1975 application, the application never would have been denied.

ed only if it is clearly unreasonable. *United States v. Larionoff,* 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977). The burden of proving entitlement rests upon the applicant, *Wang v. INS,* 602 F.2d 211, 214 (9th Cir.1979); *Sanghavi v. INS,* 614 F.2d 511, 513 (5th Cir.1980); his proof must be unambiguous, *Wang;* and any doubts must be resolved against the applicant. *Id.*

Applying this standard, we must affirm the Board. Although it is apparent from the record that documentation of the China Gate investment is available and was offered to the immigration judge, it is equally apparent that such documentation was not included in the original or in an amended I–526 form. Nor was documentation offered to the INS investigator during the 1977 interview. The burden was upon the applicant to follow the prescribed channels for proving exemption. This he did not do.

We affirm the decision of the Board of Immigration Appeals denying to petitioners Yung Tsang Chiu and Su Lau adjusted alien status.