Bernard **KAHLENBERG**, Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE**, Respondent.

No. 84–5196.

United States Court of Appeals,
Eleventh Circuit.

June 25, 1985.

Chaykin, Karlan & Jacobs, Sharon B. Jacobs, Coral Gables, Fla., for petitioner.

James A. Hunolt, Office of Immigration Litigation, Civ. Div., Washington, D.C., for respondent.

Before RONEY and KRAVITCH, Circuit Judges, and THOMAS,* District Judge.

DANIEL HOLCOMBE THOMAS, District Judge:

An order to show cause issued in July 1981, alleged that petitioner Kahlenberg remained in the United States longer than authorized and was therefore deportable pursuant to Section 241(a)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(2). After a deportation hearing, the immigration judge found petitioner deportable and denied his request for relief from deportation based on his application for adjustment of status to that of a lawful permanent resident as an investor. Petitioner appealed to the United States Board

* Honorable Daniel H. Thomas, U.S. District Judge for the Southern District of Alabama, sitting by designation.

of Immigration Appeals which upheld the finding of deportability and the denial of adjustment status. Appeal to this court followed and the decision below was stayed. We affirm.

FACTS:

Petitioner is a native of Rumania and a citizen of Canada. Petitioner was admitted to the United States as a non-immigrant for business on a B-1 Business Visa in May 1976. In June 1976, petitioner applied for adjustment of status to that of a lawful permanent resident as an investor pursuant to 8 C.F.R. § 212.8(b)(4). The basis of petitioner's application was his investment in B & M Holding, Inc. which had no employees other than petitioner and his wife. B & M Holding, Inc. was doing business as Pan-Can-Am Floral Associates which dealt primarily in horticultural products and employed approximately 20 employees. Petitioner's application indicated that he had invested at least $10,000 in B & M Holding, Inc.

In late 1979, Pan-Can-Am was declared bankrupt after incurring losses exceeding $100,000. B & M Holding, Inc. thereafter became dormant and has not conducted further business.

Petitioner returned to Canada in early June 1979 to attend his daughter's funeral without notifying the immigration authorities. Upon returning to the United States, approximately four days later, petitioner was inspected and questioned about the nature of his trip. After explaining that he resided in Florida and had gone to Canada to attend his daughter's funeral, petitioner was then admitted. On June 20, 1979, petitioner's application for adjustment of status was denied by the District Director of the Immigration Service pursuant to 8 C.F.R. § 245.2(a)(3) on the ground that petitioner's departure from the United States was deemed an abandonment of the application.

In December 1980, petitioner sold his home and used the proceeds to begin a business called Plants, Etcetera. The business was placed in his wife's name. The record indicates that Plants, Etcetera employed four employees, other than petitioner and his wife, and that approximately $20,000 had been invested in the business. This business, however, was not listed on Form I-526.

In July 1981, an order to show cause was issued alleging that petitioner had remained in the United States longer than authorized pursuant to 8 C.F.R. § 214.2(b)(1), 8 U.S.C. § 1251(a)(2). 8 C.F.R. § 214.2(b)(1) provides that any B-1 visitor for business or B-2 visitor for pleasure may be admitted for a period of not more than one year, however, the visitor may be granted extensions of a temporary stay in increments not exceeding six months each. After a hearing, the immigration judge found petitioner deportable based on the fact that petitioner had entered the United States in June 1979 without the proper documents for admission into the United States. Specifically, the immigration judge found that petitioner's admission into the United States, upon his return from Canada, could have been only that of a visitor for business or pleasure (or some other non-immigrant category) and therefore petitioner was subject to the one year time period. The immigration judge concluded that petitioner was deportable since more than one year had elapsed since his return from Canada and petitioner failed to provide evidence of any extension.

The immigration judge upheld the denial of adjustment status on the ground that petitioner was statutorily ineligible to qualify as an investor. The immigration judge found that B & M Holding, Inc. which served as the basis for petitioner's adjustment of status application, was insufficient to establish investor status under either 8 C.F.R. § 212.8(b) or § 212(a)(14) of the Immigration and Nationality Act because: (1) B & M Holding became dormant upon Pan-Can-Am's bankruptcy; (2) B & M Holding did not employ any United States citizen or lawful permanent residents other than the Kahlenbergs; and (3) Petitioner had not been determined to be exempt from the labor certification requirements of Section 212(a)(14) of the Act. The judge further

found that petitioner's subsequent investment in Plants, Etcetera, did not constitute a continuing enterprise derived from the earlier investment in B & M Holding, Inc.

On appeal, the Board of Immigration Appeals dismissed petitioner's appeal on the grounds that petitioner did not establish his eligibility for investor status at the time of the hearing and, further, that petitioner was never determined to be exempt from the labor certification requirements.

## STANDARD FOR REVIEW

The Board's finding that Kahlenberg was statutorily ineligible for adjustment of status is subject to appellate review for errors of law. *Ka Fung Chan v. Immigration and Naturalization Service*, 634 F.2d 248 (5th Cir.1981); *Pei-Chi Tien v. Immigration and Naturalization Service*, 638 F.2d 1324 (5th Cir.1981). It must be noted, however, that the Board's interpretation of INS Regulations deserves great deference and controls unless plainly erroneous or inconsistent with the regulations. *U.S. v. Larionoff*, 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977). The promulgating agency's construction of its own regulations is entitled to great weight and may be discounted only if clearly unreasonable. *Udall v. Tallman*, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965).

## LEGAL DISCUSSION

Petitioner contends that the immigration judge and the Board of Immigration Appeals erred in finding him statutorily ineligible for adjustment of status as an investor and denying his application for same.

The basic statutory provision for adjustment of status to that of a permanent resident is 8 U.S.C. § 1255. It provides:

The status of an alien who was inspected and admitted or paroled in the United States may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that

of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

As a non-preference visa applicant, *see* 8 U.S.C. § 1153(a)(8), petitioner's eligibility for an immigrant visa and his admissibility for permanent residence is dependent upon proof of either labor certification, 8 U.S.C. § 1182(a)(14), or exemption from certification, 8 C.F.R. § 212.8(b). 8 C.F.R. § 212.-8(b) exempts certain classes of aliens, including "investors", from the statutory labor requirements. At the time Kahlenberg's application for adjustment of status was filed, 8 C.F.R. § 212.8(b)(4) exempted: [1]

An alien who establishes on Form I–526 that he is seeking to enter the United States for the purpose of engaging in a commercial or agricultural enterprise in which he has invested, or is actually in the process of investing, capital totalling at least $10,000, and who establishes that he has had at least 1 years' experience of training qualifying him to engage in such enterprise.

In order to establish the immediate availability of a visa as required by 8 U.S.C. § 1255, the applicant must show a priority date "on the waiting list which is no later than the date shown in the [Department of State Visa] Bulletin or the Bulletin shows that the numbers for visa applicants in his category are current." 8 C.F.R. § 245.-1(e)(1). The fixing of priority dates are governed by 8 C.F.R. § 245.1(e)(2), formerly (g)(2), which provides:

The priority date of an applicant who is seeking the allotment of a non-preference immigrant visa number shall be fixed by the following factors, whichever

---

**1.** On October 7, 1976, subsequent to petitioner's application, 8 C.F.R. § 212.8(b)(4) was amended to require (1) investment of capital totalling at least $40,000 in an enterprise in the United States in which he will be a principal manager; and (2) employment of at least one person who is a United States citizen or an alien lawfully admitted for permanent residence, exclusive of the alien, his spouse and children.

is the earliest.... (ii) The date on which Form I–485 is filed if the applicant establishes that.... the labor certification provisions of 8 U.S.C. § 1182(a)(14) do not apply to him....

Due to the demand for visas and changes in the immigration laws, Congress, in 1981, exempted a narrowly defined class of non-preference alien investors from the numerical limitations imposed by Sections 201 and 202 of the Immigration and Nationality Act, 8 U.S.C. §§ 1151 and 1152. Section 19 of the Immigration and Nationality Amendments Act of 1981, Pub.L. No. 97–116 § 19, 95 Stat. 1621 (1981), provides:

> The numerical limitations contained in Sections 201 and 202 of the Immigration and Nationality Act shall not apply to any alien who is present in the United States *and who, on or before June 1, 1978 —*
>
> (1) Qualified as a non-preference immigrant under Section 203(a)(8) of such act (as in effect on June 1, 1978);
>
> (2) *Was determined to be exempt from the labor certification requirement* of Section 212(a)(14) of such Act because the alien had actually invested, before such date, capital in an enterprise in the United States of which the alien became a principal manager and which employed a person or persons (other than the spouse or children of the alien) who are citizens of the United States or aliens lawfully admitted for permanent residence; and
>
> (3) Applied for adjustment of status to that of an alien lawfully admitted for permanent residence. 8 U.S.C. § 1151 note (emphasis added).

Section 19 of the Amendments to the Immigration and Nationality Act thereby made non-preference visas available to alien investors who had achieved investor status prior to the unavailability of non-preference visa numbers. H.R.Rep. No. 264 at 36; 1981 U.S.Code Cong. and Ad. News 2577, 2605.

Although an applicant may be denied resident status by the District Director, his application may be renewed before an immigration judge during deportation proceedings. 8 C.F.R. § 245.2(a)(4). However, the burden of proving entitlement rests upon the applicant, *Wang v. Ins.*, 602 F.2d 211, 214 (9th Cir.1979); *Sanghavi v. Ins.*, 614 F.2d 511, 513 (5th Cir. 1980), and his proof must be unambiguous because any doubts must be resolved against him. *Yung Tsang Chiu v. U.S. Dept. of Justice*, 706 F.2d 774, 777 (6th Cir.1983); *Wang v. Ins., supra* at 214.

In support of his contention, petitioner argues that at the time his application was filed, his investment in B & M Holding, Inc. qualified him for investor status. Petitioner bases his argument on his submission of Form I–526, which indicated that he had actually invested the requisite amount of capital in a commercial or agricultural enterprise as provided by 8 C.F.R. § 212.-8(b)(4),[2] and Section 19 of the Immigration and Nationality Amendments Act of 1981.

We do not question the fact that petitioner had met the requirements of 8 C.F.R. § 212.8(b)(4) at the time his application was filed. However, an application for adjustment of status is equivalent to an application for admission to the United States. An application such as this is a continuing one and, in light of the non-immigrant alien's assimilation to the position of an applicant for entry, he must be eligible, at the time his application is acted on, for the preference category relied on when the application was filed. *See Matter of Ketema*, I & N Dec. 2911 (BIA 1982); *Pei-Chi Tien v. Immigration and Naturalization Service*, 638 F.2d 1324, 1328 (5th Cir. 1981). It was therefore necessary for petitioner to establish his eligibility at the time of the deportation hearing. The record clearly indicates that, at the time of the deportation hearing, the investment which petitioner relied upon for adjustment status

---

**2.** It is undisputed that Kahlenberg has met the experience requirement of 8 C.F.R. § 212.-8(b)(4).

had been idle for approximately 2 years. Furthermore, the principal asset of said investment had been bankrupt for over 2 years. The regulations, as understood by this court and as interpreted by the service, contemplate that the investment for which adjustment of status is relied upon must be productive of a service or commodity. *See Matter of Heitland,* 14 I & N Dec. 563 (BIA 1974); *Matter of Caralekas,* I & N Dec. 2333 (BIA 1975). The immigration judge and the Board of Immigration Appeals concluded that petitioner's holding company (B & M), and the holding company's principal asset (Pan-Can-Am Floral Associates), failed to constitute a commercial enterprise within the meaning of the regulations.

Based on the above, we cannot find such a determination clearly erroneous and, therefore, agree with the tribunal below. Petitioner's reliance on *Gill v. Immigration and Naturalization Service,* 666 F.2d 390 (9th Cir.1982) is misplaced. In *Gill,* the court interpreted that portion of 8 C.F.R. § 212.8(b)(4) which requires the alien to establish that he has invested, "or is actively in the process of investing" capital in an enterprise. The Ninth Circuit Court of Appeals held that the "critical inquiry is whether, at the time of his application, the alien is pursuing an ongoing and systematic plan to invest the requisite amount", *Gill v. Immigration and Naturalization Service, supra* at 393. Although it may appear that the holding in *Gill* aids petitioner, it does not. In *Gill,* the court was concerned with whether evidence of subsequent expenditures by the alien would "trace back" to the enterprise listed in the application since, at the time of the application, the alien failed to persuade the immigration judge and the BIA that he had actually invested the requisite amount of capital. In the present case there is no dispute that petitioner had invested the required amount of capital at the time of his application.

Petitioner further maintains that he was exempt from having to establish the immediate availability of an immigrant visa pursuant to Section 19 of the Immigration and Nationality Amendments Act of 1981 which eliminated the numerical requirements of Sections 201 and 202 of the Immigration and Nationality Act. Petitioner argues that the amended section requires only that he actually invest capital prior to June 1, 1978, and that the language of the statute does not require that a determination of exemption be made before June 1, 1978. We cannot agree. As noted above, the promulgating agency's construction of its own regulations may be discounted only if clearly unreasonable. *Udall v. Tallman, supra.* In any event, our reading of the statute is entirely consistent with that advanced by the Service. The statute specifically states that only the numerical limitations contained in Sections 201 and 202 of the Immigration and Nationality Act shall not apply to one who: *"on or before June 1, 1978, ... was determined to be exempt from the labor certification requirements ..."* (emphasis added) The record is devoid of any evidence indicating that petitioner's application for adjustment of status as an investor was granted, or that his investment in B & M Holding, Inc. was approved by the Service prior to June 1, 1978. Our interpretation of the statute is that Section 19 is available to those alien investors who had already been granted investor status but were ineligible solely on the basis that visa numbers were unavailable.

Petitioner also raises the issue of whether the immigration judge erred in concluding that Mr. Kahlenberg's return to the United States on or about June 5, 1979, was an official "entry" as a visitor which entitled him to remain in the United States for not more than one year, absent a grant or extension. Petitioner argues that, since the immigration judge determined that petitioner's return to the United States on or about June 5, 1979, did not constitute an abandonment of his application for adjustment of status, such a finding precludes a further finding that petitioner's return constituted an official "entry" into the country. Consequently, petitioner argues that

he was not deportable at the time of the deportation hearing. This issue is not properly before this court. The record fails to indicate that the issue of deportability was ever raised before the Board of Immigration Appeals, therefore, this court lacks jurisdiction to consider this issue. *Ka Fung Chan v. Immigration and Naturalization Service*, 634 F.2d 248, 258 (5th Cir.1981). If a petitioner wishes to preserve an issue for appeal, he must first raise it in the proper forum. *Tejeda-Mata v. Immigration and Naturalization Service*, 626 F.2d 721, 726 (9th Cir.1980); *See* 8 U.S.C. § 1105a(c).

In any event, it would be unnecessary to determine whether petitioner's return constituted an official "entry" for purposes of deportation. 8 U.S.C. § 1251(a)(9) provides that any alien in the United States shall be deported who: "(9) was admitted as a non-immigrant and *failed to maintain the non-immigrant status in which he was admitted* or to which it was changed...." (emphasis added). Petitioner was found deportable because he had remained longer than authorized. To prove "overstay", the Service need only show a non-immigrant's admission for a temporary period, that the period has elapsed, and that the non-immigrant has not departed. *Ho Chang Tsao v. Immigration and Naturalization Service*, 538 F.2d 667, 678 (5th Cir.1976), *cert. denied*, 430 U.S. 906, 97 S.Ct. 1176, 51 L.Ed.2d 582 (1977); *Milande v. Immigration and Naturalization Service*, 484 F.2d 774 (7th Cir.1973); *Akhbari v. Immigration and Naturalization Service*, 678 F.2d 575, 577 (5th Cir.1982).

Petitioner admitted he was an alien. His application for status as a permanent resident clearly indicates that he entered the United States in May 1976, under a B–1 Business Visa. An alien admitted under a B–1 Business Visa may be admitted for a period of not more than one year, however, he may be granted extensions in increments of six months each. 8 C.F.R. § 214.2(b)(1). Petitioner has failed to establish on the record that any extensions have been granted. Accordingly, Mr.

Kahlenberg was deportable at the time of the deportation hearing.

## CONCLUSION

Based on the foregoing reasons, WE AFFIRM.